Hon. James P. Murphy Chairperson The City University of New York
You have requested, through counsel, an opinion as to whether or not a proposed capital lease-acquisition agreement between The City University of New York (CUNY), as lessee, and the owners, as lessors, of certain improved real estate in Manhattan is a legal, valid, binding and enforceable obligation of CUNY. Under the terms of the agreement, the owners will make specified improvements on the property and deliver the completed facility to CUNY for use by John Jay College of Criminal Justice, a senior college of CUNY. The project is to be financed through the issuance of tax-exempt "certificates of participation" (COPs) that will be repaid out of lease payments to be made by CUNY. Specifically, your request raises the question of whether or not this capital lease, which has been duly authorized by the Trustees of CUNY, is subject to the Wicks laws and the competitive bidding requirement of Education Law § 6218(b). If it is subject to the Wicks laws, failure to prepare separate specifications and to award contracts separately for certain classes of work, e.g., plumbing, heating, and electrical wiring, renders the contract void. For contracts subject to Education Law, §6218(b), a similar result flows from failure to put out for competitive bidding contracts for major building construction or alteration work. This opinion focuses on the effect, if any, of the Wicks laws and Education Law, § 6218(b) on the validity of the subject capital lease.
You have characterized the agreement as a capital lease (as opposed to a "true lease") because, at least, it contemplates transfer of ownership of the property to a designee of the lessee (see, United States vArcher-Daniels-Midland Co., 584 F. Supp. 1134 [SD Iowa, 1984]). This arrangement seems well suited for the particular means of financing chosen for this project — issuance of COPs that will be backed by the rent payable under the lease agreement. This arrangement may be contrasted with the more conventional form of acquisition of real property for public purposes — condemnation of the property, as is, and renovation under the direct supervision of a State agency. Typically, this latter form of acquisition by CUNY would be financed through issuance of CUNY Construction Fund bonds (see, Education Law, Art, 125-B).
We have found no statutory provision that subjects CUNY construction projects to the Wicks laws. CUNY is subject to Education Law, §6218. The competitive bidding requirements contained in § 6218(b) extend to "work or labor or the purchase of supplies . . . or for the alteration of any building . . ." Leases, presumably "true leases", are not contained among the activities listed in this section. However you have entered into a capital lease which requires extensive alterations to the building being acquired. Such alterations clearly would be covered if CUNY sought directly to contract for the work.
You have raised, however, the question of whether this capital lease is nonetheless excepted from the requirements of section 6218(b) because it cannot be put out for competitive bid. You have emphasized that this property is uniquely suited for its intended use. The property is located diagonally across the street from CUNY owned facilities that are occupied by John Jay College. When renovated, the property will replace John Jay's South Hall. South Hall is inadequate for the college's needs and CUNY's lease on the space is due to expire in 1988. You have advised that the owners of the property which CUNY wishes to acquire are unwilling to sell it on an "as is" basis. Instead they insist on making the renovations and delivering it on a "turnkey" basis. You have advised further that condemnation and renovation by CUNY or a State agency is not a viable alternative since, if so acquired, the facility could not be made ready for use by the time CUNY's lease on South Hall expires. You have advised also that the capital lease arrangement is less costly than conventional condemnation and renovation by CUNY. You have cited our Informal Opinion No. 81-122 and Marino v Town of Ramapo (68 Misc. 44 [Sup Ct, Rockland Co, 1971]) in support of the view this capital lease is excepted from the competitive bidding requirements of Education Law, § 6218(b).
While our prior opinion may be relevant to the question of whether or not this particular capital lease is exempted from the competitive bidding requirements of Education Law, § 6218(b), we are satisfied that the recent amendment to the State Finance Law, specifically new Article 5-A, is intended to waive the requirement of competitive bidding with respect to the capital lease for the purpose of obtaining facilities adjacent to John Jay College. Section 4 of that statute reads in pertinent part:
 "Notwithstanding any other provisions of law, during the fiscal year beginning April first, nineteen hundred eighty-six, certificates of participation . . . not in excess of two hundred eighty million dollars ($280,000,000) [may be used] to finance a capital lease for the purpose of obtaining facilities for John Jay College of the City University of New York. These certificates may be issued for a period not to exceed twenty-five years" (emphasis added). Thus, "[n]otwithstanding any other provision of law", the Legislature has authorized a "capital lease for the purpose of obtaining facilities for John Jay College of the City University of New York". The governor's bill jacket accompanying this legislation reveals an intention to acquire these facilities through the capital lease device rather than via a "conventional acquisition (condemnation and Dormitory Authority financing of construction)" (Div. of Budget Report on Bills, p 5 in Governor's Bill Jacket to S-9598 [Sess Year, 1986]).
The Legislature expressly authorized the acquisition of this facility for use by John Jay College through issuance of COPs. However, this parcel of real estate could not, as a practical matter, be obtained and financed through the issuance of COPs except on the basis of an arrangement that permitted the property owners to retain responsibility for the renovations. Typically COPs are issued and the proceeds are used to finance the cost of the leased property. COPs are not legal or moral obligations of the State. They are secured by the rent payable under that lease between the property owners and CUNY and by the property itself. Since this acquisition involves a unique parcel of real estate, there are no "competitors" available to submit bids. Here the property owners have insisted on retention of responsibility for the renovations and CUNY has no role in letting of construction contracts at the facility. Acquisition of this facility via condemnation was expressly rejected due to time and cost factors. Thus acquisition by conventional condemnation is not a viable alternative and participation by a private developer is central to the COPs form of financing for this transaction.
In summary, we conclude that the Wicks law do not apply to CUNY construction projects and the Legislature has determined to except this acquisition from any possible application of Education Law, §6218(b). Consequently, separate specification and competitive bidding requirements embodied in such laws do not apply to the capital lease-acquisition agreement CUNY has entered into regarding the described facility for John Jay College. Accordingly, these provisions do not affect the agreement as a legal, valid, binding and enforceable obligation of CUNY.